S. LANE TUCKER
United States Attorney

AINSLEY MCNERNEY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: Ainsley.McNerney1@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW MCDONALD and<br>CHRISTOPHER BRUMWELL,<br><br>Defendants. | No. 3:23-cr-00089-MMS |

This document and its addenda set forth completely the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.

**PLEA AGREEMENT**

**1. Summary of Agreement**

The defendant, ANDREW MCDONALD, agrees to plead guilty to the following count of the Information in this case:

- Count 1: Unlawful Transport of Illegally Taken Wildlife in violation of 16

U.S.C. § 3372(a)(1), 16 U.S.C. § 3372(d)(2)

The parties agree that a sentence of probation for a period of four years is an appropriate disposition of this matter, along with the condition that the defendant not hunt wildlife nor obtain a hunting license worldwide for a four year period to begin upon imposition of sentence, and to pay a fine in the amount of $10,000 to the Denali National Park Foundation. The parties intend to be bound by that recommendation. The defendant also agrees to abandon all of the moose meat and parts obtained from the hunt, including the moose skull, as well as the Browning X-Bolt .300 caliber rifle, Serial No. 11334ZP354, and Vortex Razor 6-24x50 AMD Rifle Scope, Serial No. 005935. As part of this agreement, the defendant expressly agrees not to file with the court a petition for early termination of probation. The United States agrees not to criminally prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Information. Following imposition of sentence, the United States will move to dismiss the remaining counts.

The defendant will waive all rights to appeal the conviction and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea.

**2. Federal Rule of Criminal Procedure 11**

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(C) will control this plea agreement. Thus, the defendant may withdraw

from this agreement or the guilty plea if the Court rejects the parties' sentencing recommendations at the sentencing hearing. Moreover, as an express term of this agreement, the defendant agrees that the government may, at its sole discretion, withdraw from this agreement if the Court rejects the sentencing recommendation. Thus, any previously reduced or dismissed charges may be reinstated if the agreement is rejected by the Court.

## 3. Charges, Elements, Penalties, and Other Matters Affecting Sentence

### 3.1. Charges of Conviction

The defendant agrees to plead guilty to the following counts of the Information:

- Count 1: Unlawful Transport of Illegally Taken Wildlife in violation of 16 U.S.C. § 3372(a)(1), 16 U.S.C. § 3372(d)(2)

### 3.2. Elements of the Charged Offenses

The elements of the offense charged in Count 1 are as follows:

1. The defendant knowingly transported an illegally taken bull moose in Denali National Park;

2. In the exercise of due care, the defendant knew or should have known that the bull moose had been taken in violation of or in a manner unlawful under United States Law.

### 3.3. Statutory Penalties

The maximum and minimum penalties applicable to the charges of conviction are as follows:

Count 1

- Imprisonment for up to one year
- A fine of up to $100,000
- Supervised release for up to one year
- A $25 special assessment

### 3.4. Other Matters Affecting Sentence

#### 3.4.1. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence:

1. Pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date.

2. Upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release.

### 3.5. Fine

The defendant agrees that the Court will order restitution to the Denali National Park Foundation in the amount of $7,500. The defendant agrees that the Court will order a fine in the amount of $2,500 to be paid to the Denali National Park Foundation.

### 3.6. Abandonment

The defendant agrees to voluntarily abandon his interest in the following:

1. Any moose meat or parts from the illegal hunt, to include the moose skull.
2. Browning X-Bolt .300 caliber rifle, Serial No. 11334ZP354

3. Vortex Razor 6-24x50 AMD Rifle Scope, Serial No. 005935

**4. Factual Basis**

The defendant admits the truth of the allegations in the Information and of the following statement:

On or about September 20, 2021, defendants ANDREW MCDONALD and CHRISTOPHER BRUMWELL were hunting in Denali National Park and Preserve in the Dry Creek region when they conspired to kill a bull moose they knew to be located within the Park boundary. At approximately 5:00 PM, MCDONALD shot and killed a bull moose located within the Park boundary. When BRUMWELL and MCDONALD conspired to shoot the moose and when MCDONALD ultimately shot the moose, MCDONALD and BRUMWELL were located approximately 456 yards from a Park boundary marker and inside of the Park boundary. The illegally taken moose was approximately 936 yards inside of the Park boundary. MCDONALD and BRUMWELL quartered the illegally taken bull moose to transport it out of the Park boundary. MCDONALD and BRUMWELL skinned the skull of the moose to prepare it for a European-style mount. MCDONALD and BRUMWELL then transported two game bags of meat weighing approximately 69 pounds and 57 pounds outside of the Park boundary and cached them approximately 75 yards from a Park boundary marker.

When Park Rangers arrived at the kill site two days after the illegal kill, they observed the moose hide, a skinned-out front quarter without signs of predation, a small gut pile, a hind leg bone without meat, and an approximately eight-foot diameter circle of

disturbed ground. The condition of the kill site suggested that a bear had gotten to the moose meat that MCDONALD and BRUMWELL left behind.

Following the illegal kill, MCDONALD and BRUMWELL knowingly conspired to delay tagging the illegally taken bull moose, intending to wait until after the surreptitious transport had taken place to affix the locking tag and punch MCDONALD's hunting license. With BRUMWELL'S knowledge, MCDONALD never tagged the illegally taken bull moose.

On or about September 21, 2021, around 6:30 A.M. or 7:00 A.M., MCDONALD, BRUMWELL and Katherine Brumwell left their campsite on a four-wheeler and a side-by-side carrying pack boards to return to the illegally taken bull moose and continue transporting the meat. At some point along the route, MCDONALD split from the group to return to camp due to a flat tire. BRUMWELL then communicated via his Garmin inReach GPS device to MCDONALD that "we're gonna move the goods." MCDONALD responded "You're going to move them where we put the two bags yesterday." Later, when he was approximately 113 yards from the cached game bags, BRUMWELL communicated to MCDONALD, "Change is [sic] plans. People watching from the ridge. Gonna come back to camp."

BRUMWELL and his wife were then contacted on the trail by an individual who had observed the illegal kill the evening before. When this individual offered to let BRUMWELL use the individual's satellite phone to report the kill, BRUMWELL falsely told the individual that his hunting party did not kill the moose and refused the individual's

offer to use the satellite phone. Neither MCDONALD nor BRUMWELL packed out any of the salvageable meat on September, 21, 2021, nor did they report the illegal kill.

When contacted by National Park Service (NPS) Rangers on September 21, 2021, MCDONALD made a series of false statements to conceal both taking and transporting the moose, including that MCDONALD and BRUMWELL had not seen the boundary markers for the Park. MCDONALD also told NPS Rangers that no one in his hunting group shot any moose. MCDONALD later admitted to NPS Rangers that he and BRUMWELL killed a moose on the evening of September 20, 2021 and packed out two game bags, which he and BRUMWELL cached approximately 700–800 yards away from their side-by-side before returning to camp.

BRUMWELL marked the site from which MCDONALD and BRUMWELL shot the bull moose, as well as the kill site where MCDONALD and BRUMWELL quartered and bagged the illegally taken moose on his Garmin inReach device, which indicated they were within the Park boundary. MCDONALD and BRUMWELL knew they illegally killed a moose inside of the Park boundary.

After being instructed by NPS Rangers that they must pack out the moose as required by law and return it to the NPS Rangers, MCDONALD and BRUMWELL failed to do so. NPS Rangers later went to the kill site and personally packed out 70 pounds of salvageable meat. The bear rendered the remaining meat unsalvageable.

After being instructed by NPS Rangers that they must pack out the moose as required by law and return it to the NPS Rangers, MCDONALD and BRUMWELL failed

to do so. NPS Rangers later went to the kill site and personally packed out 70 pounds of salvageable meat. The bear rendered the remaining meat unsalvageable.

The parties agree that the Court may rely upon this statement to determine whether there is a factual basis to support the guilty plea, to determine the relevant conduct applicable for purposes of the United States Sentencing Guidelines, and to evaluate the proper sentence under the criteria set forth in 18 U.S.C. § 3553(a).

## 5. The United States Sentencing Guidelines, Guideline Application Agreements, and Sentencing Recommendations

### 5.1. Advisory U.S. Sentencing Guidelines

The defendant acknowledges that the Court will consult the advisory United States Sentencing Guidelines as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The Guidelines do not establish the statutory maximum or minimum sentence applicable to the offense to which the defendant is pleading guilty. The Guidelines are not mandatory and the Court is not bound to impose a sentence recommended by the Guidelines.

### 5.2. Guideline Application Agreements

All agreements regarding Guidelines applications are set out in this section.

#### 5.2.1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of

responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility—including by inappropriately seeking to delay sentencing—the United States will not make or, if already made will withdraw, this recommendation and motion.

### 5.3. Sentencing Recommendations

The United States Probation Office will prepare the defendant's presentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the Guidelines calculation in the presentence report, and to present evidence in support of their respective sentencing arguments.

The parties agree that a sentence of probation for a period of four years is an appropriate disposition of this matter, along with the condition that the defendant not hunt wildlife nor obtain a hunting license worldwide for a four year period to begin upon imposition of sentence, and to pay a fine in the amount of $10,000. The parties intend to be bound by that recommendation. The defendant also agrees to abandon all of the moose meat and parts obtained from the hunt, including the moose skull, as well as the Browning X-Bolt .300 caliber rifle, Serial No. 11334ZP354, and Vortex Razor 6-24x50 AMD Rifle Scope, Serial No. 005935. As part of this agreement, the defendant expressly agrees not to file with the court a petition for early termination of probation.

The defendant acknowledges that the United States is obligated to provide the Court with truthful and relevant information that may inform the sentencing decision, and that doing so will not entitle him to rescission of this agreement so long as the United States does, in fact, recommend a sentence that is not inconsistent with this agreement.

## 6. Additional Agreements by the United States

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the United States agrees that it will not criminally prosecute the defendant further for any other offense now known arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth above.

However, if the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case notwithstanding any term of this agreement, to include any charges dismissed thereof. The United States shall be entitled to the automatic reinstatement of any such dismissed charges. As an express term of this agreement, the defendant hereby agrees that to waive any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## 7. Additional Agreements by the Defendant

### 7.1. Waiver of Trial Rights

By entering into this agreement, the defendant intentionally and voluntarily waives the following trial rights:

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have counsel appointed at public expense to represent the defendant at trial;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

### 7.2. Waiver of Appellate Rights

The defendant waives the right to appeal any conviction for any of the charges set forth in this agreement. The defendant further waives the right to appeal any sentence imposed pursuant to this agreement, except on the grounds that the sentence exceeds the

maximum term authorized by statute. The defendant understands that this waiver includes, but is not limited to, the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support a plea of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement.

### 7.3. Waiver of Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack any conviction or sentence imposed pursuant to plea agreement, or any portion thereof, including the length of any term of imprisonment; forfeiture (if applicable); length, terms, or conditions of probation or supervised release (if applicable); any fines or restitution; and any and all constitutional or legal challenges to any conviction or guilty plea. The only exceptions to this collateral attack waiver are: a challenge to the conviction or sentence alleging ineffective assistance of counsel, based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; or a challenge to the voluntariness of the defendant's guilty plea. The scope of this waiver applies to a collateral attack brought in any procedural vehicle, including but not limited to a challenge brought pursuant to 28 U.S.C. § 2241 or

U.S. v. McDonald et. al

3:23-cr-00089-MMS            Page 12 of 18

§ 2255. The filing of such a challenge shall constitute a material breach of this agreement.

### 7.4. Waiver of Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement. The defendant agrees that the statements made in signing this agreement shall be deemed usable and admissible in any subsequent proceeding, regardless of whether the plea agreement or any other portion thereof is subsequently withdrawn or rescinded. The foregoing provision acts as a modification and express waiver of the provisions of Fed. R. of Evid. 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis. The sole exception to this waiver occurs if the defendant or the government withdraws from this agreement because the District Court judge rejects the plea agreement.

### 7.5. Consent to Plea Before Magistrate Judge

The defendant has the right to enter a plea before a United States District Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections (if any) to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case.

### 7.6. Agreement to be Sentenced Within 120 days of Entering a Plea

The defendant agrees to be sentenced within 120 days of appearing before the Court to enter a guilty plea. The defendant acknowledges that if he seeks to delay sentencing past that time without the prior consent of the United States, this conduct will be considered inconsistent with acceptance of responsibility and will forfeit any entitlement to a Guidelines reduction for acceptance of responsibility. The United States acknowledges that a delay beyond 120 in sentencing attributable to the Court, the government, or other factors beyond the defendant's control will not be considered inconsistent with acceptance of responsibility.

### 7.7. Release or Detention Pending Sentencing

The defendant acknowledges that once his plea of guilty is accepted by the District Judge, it will be his burden to demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger if he wishes to be released pending sentencing. As an express term of this plea agreement, the defendant agrees to abide by all release conditions that may be imposed and acknowledges that his failure to comply with any such condition may result in his detention pending sentencing, and that such failure will constitute a material breach of this agreement, and will entitle the government, at its option, to make a sentencing recommendation different from that set forth above, or to rescission of this agreement altogether.

### 7.8. Breach and Other Circumstances Entitling the Government to Relief

The defendant acknowledges that, if the United States demonstrates by a preponderance of the evidence that he has failed in material way to perform any obligation

set out in this agreement, the United States is entitled, at its option, to recission of this agreement. This entitlement supplements, and does not replace, any other form of relief that the United States might be entitled to in the event of a breach, to include any other specific remedy set out under the terms of this plea agreement. The defendant acknowledges if the plea agreement is rescinded, the defendant's admission to the factual basis will be admissible against the defendant as specific in Section 7.4 of this agreement.

## 8. The Parties' Acceptance of this Agreement

I, ANDREW MCDONALD, the defendant in this case, affirm this document contains all of the agreements made between me (with the assistance of my attorney) and the United States regarding my guilty plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I appear to enter my plea.

I enter into this agreement voluntarily, with the intent to be bound, and with a full understanding that the concessions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill my obligations will constitute a material

U.S. v. McDonald et. al
3:23-cr-00089-MMS

Page 15 of 18

breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand and agree that the government's burden to prove a breach will be by a preponderance of the evidence.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter a guilty plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charges contained in the Information. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the Guidelines may have on my sentence. However, I understand that my attorney cannot guarantee any

particular sentence except as set out herein, and I expressly acknowledge that my decision to plead guilty is not based on a belief that I am certain to receive a particular sentence that is not set out in this agreement.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Unlawful Transport of Illegally Taken Wildlife in violation of 16 U.S.C. § 3372(a)(1), 16 U.S.C. § 3372(d)(2), as charged in Count 1 of the Information.

DATED: 10/15/23

ANDREW MCDONALD
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a misdemeanor. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 10/16/23

JASON WEINER
Attorney for Andrew McDonald et. al

U.S. v. McDonald et. al
3:23-cr-00089-MMS

Page 17 of 18

. On behalf of the United States, I accept the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: October 16, 2023

S. LANE TUCKER
United States Attorney

/s Ainsley McNerney
AINSLEY MCNERNEY
Assistant United States Attorney
United States of America